UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LOIS BARLOW,

                  Plaintiff,

v.                                              Case No.  5:04-cv-111-Oc-10GRJ

JO ANNE B. BARNHART,
Commissioner of Social Security,

                  Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

      Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 13 & 14.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

      Plaintiff filed an application for Supplemental Security Income (SSI) benefits on June 16, 2001, alleging a disability onset date of August 1, 1999. (R. 53.) Plaintiff's application was denied initially (R. 30), and upon reconsideration. (R. 37.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").

---

[1]  Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

The ALJ conducted Plaintiff's administrative hearing on October 3, 2003. (R. 275 - 284.)[2] Plaintiff was not represented by legal counsel at the hearing. The ALJ issued a decision unfavorable to Plaintiff on November 5, 2003 (R. 12 - 16),[3] and Plaintiff filed a timely request for review of the hearing decision with the Social Security Administration's Office of Hearings and Appeals. The Appeals Council denied Plaintiff's request for review on February 12, 2004 (R. 2 - 4), making the hearing decision the final decision of the Commissioner. On April 2, 2004, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II.  ISSUES PRESENTED

Plaintiff raises only one issue on appeal: whether the ALJ effectively advised Plaintiff of her right to counsel. She contends that the ALJ failed to inform her that she might be able to secure free counsel; that it is illegal to represent Social Security claimants for an unapproved fee; or that attorneys regularly represent claimants on contingency fees. Similarly, Plaintiff maintains that the notice of the administrative hearing (R. 17 - 20) was defective because it did not advise her of the possibility of obtaining free counsel and because it did not explain the statutory limitations placed on attorney's fees.

In response, Defendant argues that Plaintiff was fully and repeatedly advised of her right to legal counsel, and her waiver was therefore effective. Defendant points out

---

[2] The hearing transcript reflects that the hearing took place on June 3, 2003, rather than October 3, 2003. Plaintiff and Defendant both refer to this transcript as that of the October 3, 2003 administrative hearing, and there are no other hearing transcripts in the record.  The Court therefore presumes that the transcriber committed a scrivener's error, and treats the transcript as one from the October 3, 2003 hearing.

[3] The ALJ's decision is not in the correct page order. *See* R. 12.

that Plaintiff was notified at least three times prior to the administrative hearing that she could have a representative appear with her. She states that one such notice specifically advised Plaintiff that she might be able to secure free counsel; that attorney's fees must be approved by the Commissioner; and that attorneys regularly represent claimants on contingency fees. Defendant further contends that even if Plaintiff could show an invalid waiver of counsel based on her lack of knowledge, this cause is still not subject to remand because Plaintiff has failed to show, much less argue, any prejudice arising from her lack of counsel.

### III. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[4] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[5]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[6] The district court must view the evidence as a whole, taking

---

[4] *See* 42 U.S.C. § 405(g).

[5] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[6] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[7] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[8]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[9] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[10]

The ALJ must follow five steps in evaluating a claim of disability.[11] First, if a claimant is working at a substantial gainful activity, she is not disabled.[12] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[7] Foote, 67 F.3d at 1560; *accord*, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[8] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[9] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[10] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[11] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[12] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[13] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[14] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[15] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[16]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[17] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[18] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[19]

However, the ALJ should not exclusively rely on the grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when

---

[13] 20 C.F.R. § 404.1520(c).

[14] 20 C.F.R. § 404.1520(d).

[15] 20 C.F.R. § 404.1520(e).

[16] 20 C.F.R. § 404.1520(f).

[17] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[18] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[19] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion."[20] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[21]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[22] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[23] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[24]

## IV. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was born on December 4, 1949. (R. 53.) She was 49 years old at the onset of her alleged disability (*Id.*), and 53 years old when the ALJ rendered his decision in this case. (R. 14.) Plaintiff is a high school graduate, and has completed "a year and a half" of college. (R. 88 & 278.) She worked as a secretary in 1980's and 1990's, and worked as a clothes processor at Good Will from April 1999 through August

---

[20] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 ( 11th Cir. 1996); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u> at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[21] <u>Walker</u> at 1003.

[22] <u>Wolfe</u> at 1077-78.

[23] *See* Id.

[24] *See* <u>Doughty</u> at 1278 n.2.

1999. (R. 83 & 282.) Plaintiff's work as a secretary required her to type and perform technical skills. (R. 83.) The job also required her to sit and write eight hours a day, and stand or walk for less than one hour a day. (*Id.*) She would frequently lift up to ten pounds as a secretary. (*Id.*)

In a disability report dated June 2, 2000, Plaintiff alleged an inability to work beginning in August 1999, due to "addiction and living with an abusive partner and stress." (R. 82.) She "couldn't deal with forty hours of concentrating," and also "couldn't deal" with the public. (*Id.*)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff suffers from "a substance addiction disorder, including alcohol and nicotine and ongoing illegal marijuana use, a history of asthma, and affective and anxiety-related disorders." (R. 12.) However, the ALJ further determined that when Plaintiff is not under the influence of alcohol, nicotine, and marijuana, "she does not have any impairment or impairments that significantly limits [*sic*] her ability to perform basic work-related activities; Therefore, the claimant does not have a severe impairment." (R. 16.)

The medical evidence demonstrates a long-standing history of treatment related to drug and alcohol abuse. On March 8, 2000, Plaintiff was admitted to Trident Regional Medical Center in South Carolina for detoxification. (R. 121 - 38.) Plaintiff reported a thirty year history of alcohol abuse and a history of marijuana use (R. 122.) Her withdrawal symptoms totally resolved and on March 13, 2000, Plaintiff was

discharged in stable condition. (*Id.*) The diagnosis was alcohol withdrawal and dysthymia.[25] (R. 123.) Plaintiff was assessed with a GAF of 60.[26] (*Id.*)

On March 15, 2000, Plaintiff was seen for outpatient treatment and was prescribed Zoloft and Desyrel for depression. (R. 122, 144.) One week later, she was diagnosed with alcohol, caffeine and nicotine dependence, marijuana abuse, a generalized anxiety disorder, and a resolving panic disorder with agoraphobia. (R. 140 - 147.)

On October 5, 2000, Plaintiff underwent a psychological evaluation by Barbara Davanzo, M.D. (R. 148-50.)[27] Plaintiff admitted that she continued to drink half of a pint of vodka per day and smoke marijuana. (*Id.*) She also performed daily household chores such as laundry, cleaning, and cooking. (*Id.*) Plaintiff stated that her elderly male roommate was also an alcoholic. (*Id.*) Dr. Davanzo found no evidence of psychotic symptoms and found that her memory and concentration were within normal limits. (*Id.*) Davanzo diagnosed Plaintiff with alcohol dependence. (*Id.*) Davanzo also stated that Plaintiff's cognitive abilities were intact, and that her active drinking hindered her ability to work. (*Id.*)

On February 15, 2001, Plaintiff was treated at the Medical University of

---

[25] A disorder of the mood, less severe than a major depression, marked by a loss of interest in activities previously enjoyed, described by the patient as a feeling of being in the dumps, and lasting more than two years. *See* 2-D Attorneys' Dictionary of Medicine 5402.

[26] This rating is consistent with some mild symptoms or mild difficulty in social, occupational or school functioning, but generally functioning pretty well. *See* Diagnostic and Statistical Manual of Mental Disorders IV, Text Revision (DSM-IV, 2000).

[27] Apparently, this psychological evaluation was related to Plaintiff's earlier application for Supplemental Security Income on June 27, 2000. (R. 46 - 48.) That application was denied initially (R. 25 - 29), and no request for reconsideration was filed.

South Carolina for shortness of breath and alcohol dependence. (R. 186.) Plaintiff stated that she smoked a pack of cigarettes daily and smoked marijuana every month. (*Id.*) On May 17, 2001, a pulmonary function test indicated moderate obstructive pulmonary disease with a positive response to bronchodilator. (R. 189.) An echocardiogram performed on the same day was normal. (R. 191.) Plaintiff was diagnosed with chronic obstructive pulmonary disease ("COPD")[28] and she was prescribed inhalers. (R. 167 - 174.)

In September 2001 - three months after she again applied for SSI - Plaintiff presented at the emergency room for suicidal ideation and early pneumonia. (R. 197 - 199, 203 - 205.) It was noted that she abused alcohol and marijuana and wanted to walk in front of an oncoming car. (*Id.*) Plaintiff was diagnosed with COPD, early pneumonia, and depression. (R. 204.) She presented at the Dorchester County Alcohol and Drug Commission on September 27, 2001 for alcohol and marijuana dependency, and depression. (R. 206-21.)

On February 13, 2002, Plaintiff was again treated at the emergency room. (R. 235 -247.) She was intoxicated and stated that she had been assaulted by her boyfriend. (R. 236-38, 246.) X-rays of the lungs indicated moderate COPD (R. 247), and it was noted that Plaintiff had been prescribed inhalers. (R. 242.) Plaintiff was not cooperative during the examination, went out to smoke a cigarette, threatened to leave, and also refused a referral to a shelter. (R. 236 - 37, 241.)

---

[28] Any one of a group of diseases comprising emphysema, bronchial asthma, chronic bronchitis, bronchiectasis, and cystic fibrosis. It is marked by chronic obstruction of the bronchial tubes. Abbreviated COPD. 2-CH-CZ Attorneys' Dictionary of Medicine 1833.

On May 20, 2002, Plaintiff presented to Marvin S. Murdaugh, Jr., M.D., for a consultative examination. (R. 248 - 252.) Plaintiff was defensive, distant, and stated that she did not trust men. (*Id.*) She also denied taking any prescription medication at that time. (*Id.*) Plaintiff's musculoskeletal examination revealed good strength bilaterally, and good hand grip. (*Id.*) She demonstrated a full range of motion in all joints, and in her neck and back. (*Id.*) No muscle tenderness or spasm was noted, and Plaintiff had minimal crepitance[29] in the knees. (R, 250-51.) Plaintiff's thought process was intact and her memory was normal. (*Id.*) Murdaugh diagnosed alcohol dependency, post traumatic stress disorder by history, and asthma. (R. 251.) Plaintiff stated that she continued to drink, did not feel that it had a significant effect on her health, and she had no desire to stop drinking. (R. 249, 251.) She also stated that she spends her days cleaning up the house and doing odd jobs when she can. (R. 250.) Murdaugh noted his surprise that Plaintiff did not have more physical findings related to alcohol dependency. (R. 251.)

Plaintiff was treated for asthma, depression, and COPD by Community Health Services in Ocala, Florida, from June 2002 through June 2003. (R. 254 - 274.) She was repeatedly urged to stop smoking. (R. 263 - 265.) Plaintiff was prescribed medications including Zoloft, Prozac, Albuterol, and Atrovent. (R. 254 - 255, 263.) On June 6, 2003 - three days after the administrative hearing - she requested a letter addressing all of her health problems in furtherance of her SSI application. (R. 264.)

---

[29] Crackling sounds produced in joints, as in arthritis. *See* 2-CH-CZ Attorneys' Dictionary of Medicine 6748.

The record contains a psychiatric review technique performed by a non-examining state agency physician, Judith M. Von, Ph.D., on November 7, 2001. (R. 222 - 234.) Von found that Plaintiff displayed alcohol dependence (R. 231), and found only mild limitations in activities of daily living, social functioning, and in concentration, persistence, and pace. (R. 232.) She found no evidence of extended duration decompensation. (*Id.*)

## V. <u>DISCUSSION</u>

Plaintiff argues that the ALJ failed to fully apprise her of her right to counsel by not informing her of her options regarding representation. Plaintiff offers no argument as to how her lack of representation was prejudicial to her claim. For the reasons discussed below, the Court rejects Plaintiff's argument.

### A. Plaintiff effectively waived her right to legal representation

Although there is no constitutional right to counsel at a Social Security hearing, a claimant for social security benefits has a *statutory* right to counsel, which can be waived.[30] The Commissioner must notify the claimant of her right to be represented at the hearing before the ALJ.[31] Waiver of one's right to counsel must be knowing and intelligent.[32] However, the absence of counsel alone does not warrant remand. A claimant must prove unfairness at the hearing or clear prejudice resulting from the

---

[30] <u>Brown v. Shalala</u>, 44 F.3d 931, 934 (11th Cir. 1995) *Citing* 42 U.S.C. § 406; <u>Smith v. Schweiker</u>, 677 F. 2d 826, 828 (11th Cir. 1882).

[31] <u>Clark v. Schweiker</u>, 652 F. 2d 399, 403 (5th Cir. 1981). In <u>Bonner v. Prichard</u>, 661 F. 2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[32] <u>Smith v. Schweiker</u>, 677 F.2d 826, 828 (11th Cir. 1982.)

absence of counsel before a due process violation is found and a remand will be granted.[33]

Here, Plaintiff received no less than three (3) written notices that advised her of her right to counsel. The first was a notice of reconsideration from the Commissioner dated June 4, 2002. (R. 37 - 38.) It notified Plaintiff of her right to appeal and request an administrative hearing, and specifically stated that "you can represent yourself or be represented by a lawyer [...]. Contact your Social Security Office for names of organizations that can help you." (R.  38.)

A second notice, dated July 2, 2002, was included in the acknowledgment of her request for a hearing. (R. 42 - 43.) The notice specifically stated the following:

> "**Your Right To Representation**
> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. [...]. Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it. We have enclosed the leaflet "Social Security and Your Right to Representation." We are also enclosing a list of groups that can help you find a representative." (R. 42.)

Finally, a third notice of Plaintiff's right to counsel was included on the Notice of Hearing dated September 4, 2003 - one month before the administrative hearing. (R. 17 - 21.) The notice reminded Plaintiff that she may choose to have a person represent her at the hearing, and directed her to obtain a representative right away if she wanted such representation and had not yet obtained it. (*Id.*)

---

[33] Kelley v. Heckler, 761 F. 2d 1538, 1540 (11th Cir. 1985).

In addition to the written notices of which the Court is aware, the ALJ reminded Plaintiff of her right to counsel and gave her another opportunity to obtain counsel before continuing with the hearing. At the inception of the hearing, the ALJ stated on the record that Plaintiff was without a lawyer. (R. 277.) He then asked Plaintiff if she was aware of her right to counsel. (*Id.*) Plaintiff responded in the affirmative. (*Id.*) The ALJ then specifically asked Plaintiff if she wished to waive her right to counsel. (*Id.*) Again, Plaintiff responded in the affirmative.

In view of the foregoing, the Court concludes that Plaintiff knowingly and voluntarily waived her statutory right to counsel. Moreover, even if the Court were to conclude that Plaintiff *did not* effectively waive her right to legal counsel, Plaintiff has failed to show, much less argue,[34] that the absence of legal counsel prejudiced her claim for benefits.

As part of its inquiry into the possible prejudice to Plaintiff due to her lack of counsel, the Court need not determine "that the presence of counsel would necessarily have resulted in specific benefits in the handling of the case before the ALJ."[35] However, there must be a showing of prejudice for a court to conclude that a claimant's right to due process has been violated to such a degree that the case must be remanded.[36] A showing by Plaintiff of evidentiary gaps in the record will suffice.[37]

---

[34] Plaintiff dedicates only four sentences of her brief to the argument that the ALJ failed to adequately advise her of her right to counsel. Further, the brief contains no argument or even a suggestion that her claim for benefits was prejudiced by her lack of legal counsel.

[35] Brown at 935. *Quoting* Clark at 404.

[36] *Id.*

[37] *Id.* at 935-936.

Here, Plaintiff has failed to make such a showing. Conversely, Defendant has pointed to ample evidence of record which shows that the ALJ went to great lengths to fill any evidentiary gaps in the record before issuing his decision. As discussed more fully below, the ALJ fulfilled a basic obligation in carrying out such a task in this case.

## B. Plaintiff was not prejudiced by a lack of counsel

It is well settled that an ALJ has a basic obligation to fully and fairly develop the record.[38] This obligation exists whether or not a claimant is represented by counsel.[39] As a hearing is non-adversarial in nature,[40] the duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[41] The Court is mindful that where the right to counsel has not been effectively waived (*i.e.*, was not a knowing and intelligent waiver), the ALJ's basic obligation "rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him."[42]

As discussed above, the ALJ in this case adequately discharged his duties - even that "special duty" that arises in the wake of an ineffective waiver of counsel. The ALJ scrupulously inquired into and gathered evidence that gave him the opportunity to

---

[38] *See* Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); *See Also* Zaldivar v. Apfel, 81 F.Supp.2d 1353, 1359 (N.D. Ga. 2000).

[39] Zaldivar at 1359.

[40] *Id.*

[41] *See* Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[42] Cowart at 735. *Quoting* Clark at 404.

14

assess whether any of the alleged impairments in this case constituted a disability as defined by the Act.

Initially, the hearing transcript demonstrates that the ALJ probed into Plaintiff's activities of daily living (R. 278, 280 - 281), the extent of her perceived breathing problems (*Id.*), the extent of her depression and how it is controlled by medication (R. 279), the effects of both of the alleged impairments on her lifestyle (R. 278 - 280), her ability to stand, walk, and sit (R. 283 - 284), and whether Plaintiff was continuing to engage in substance abuse. (R. 283.)

Plaintiff admitted that she continues to drink, although "not as much," and also admitted that she could perform data entry work, but she has trouble concentrating. (R. 282 - 283.) She also stated that she can do household chores and cut grass on a "good day," and that she drives, goes to the grocery store, walks the dog, and daily reads, watches television, and does crossword puzzles. (R. 280 - 282.)

The evidence gathered and placed into the record by the ALJ also includes voluminous medical records stretching from February 2000( R. 215) up to and including July 7, 2003. (R. 262 - 264.) The ALJ discussed these records throughout his opinion.

Finally, the ALJ included in the record and discussed in his opinion two consultative reports from Drs. Mudaugh and Davanzo. As noted earlier, Plaintiff underwent a psychological evaluation by Davanzo on October 5, 2000. (R. 148-50.) Plaintiff admitted that she continued to drink half of a pint of vodka per day and smoke marijuana. (*Id.*) She also performed daily household chores such as laundry, cleaning, and cooking. (*Id.*) Dr. Davanzo found no evidence of psychotic symptoms and found that her memory and concentration were within normal limits. (*Id.*) Davanzo diagnosed

15

Plaintiff with alcohol dependence. (*Id.*) Davanzo also stated that Plaintiff's cognitive

abilities were intact, and that her active drinking hindered her ability to work. (*Id.*)

Murdaugh completed a physical examination of Plaintiff on May 20, 2002. (R.

248 - 251.) Plaintiff's musculoskeletal examination revealed good strength bilaterally,

and good hand grip. (*Id.*) She demonstrated a full range of motion in all joints, and in her

neck and back. (*Id.*) No muscle tenderness or spasm was noted. (R. 250-51.) Plaintiff's

thought process was intact and her memory was normal. (*Id.*) Murdaugh diagnosed

alcohol dependency, post traumatic stress disorder by history, and asthma. (R. 251.)

Plaintiff stated that she continued to drink, did not feel that it had a significant effect on

her health, and she had no desire to stop drinking. (R. 249, 251.) She also stated that

she spends her days cleaning up the house and doing odd jobs when she can. (R. 250.)

Murdaugh noted his surprise that Plaintiff did not have more physical findings related to

alcohol dependency. (R. 251.)

In light of the foregoing, Plaintiff has failed to demonstrate evidentiary gaps in the

record which may have worked a prejudice upon her claim for benefits, and she has

failed to show that the ALJ needed to do more to develop a full and fair record. Indeed,

the record contained ample, current, and consistent information for the ALJ to make an

informed decision. The Court therefore finds it unnecessary to disturb the ALJ's decision

in this case.

Lastly, Defendant correctly points out that an individual shall not be considered

disabled if alcoholism or drug addiction would be a contributing factor material to the

Commissioner's determination that the individual is disabled.[43] The regulations provide that the "key factor" in this analysis is whether the Commissioner would still find the individual disabled if he or she stopped using alcohol or elicit drugs.[44] In this regard, the Commissioner must evaluate which of a disabled individual's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether those remaining limitations would be disabling.[45]

If her remaining limitations would still be disabling, then alcoholism or use of elicit drugs will not be a contributing factor material to the determination of disability and the disabled person will be eligible for benefits. The disabled person bears the burden of proving that her alcoholism or elicit drug use is not a contributing factor material to the disability determination.[46]

Here, Plaintiff's treating medical professionals have unanimously stated that her physical condition would improve if she stopped drinking and smoking marijuana. This supports the Court's decision to affirm the Commissioner's decision in this case, as the ALJ noted in his decision that "[w]hen not under the influence of alcohol, nicotine, and marijuana, the claimant does not have any impairment or impairments that significantly limits [*sic*] her ability to perform basic work-related activities." (R. 16.)

---

[43] *See* 42 U.S.C. §423(d)(2)(C)(Amended by PL 108-203, March 2, 2004, 118 Stat 493). *See Also* Doughty v. Apfel, 245 F. 3d 1274 (11th Cir. 2001)(Social Security Commissioner's determination that disability claimant's alcoholism was contributing factor material to disability determination, precluding award of benefits, was supported by substantial evidence. Physician's opinions and claimant's own testimony indicated that claimant would not be disabled if he quit drinking.)

[44] 20 C.F.R. § 416.935(b)(1).

[45] *Id.* at § 416.935(b)(2).

[46] *See* Doughty at 1281 and White v. Commissioner of Social Security, 302 F. Supp. 2d 170, 173 (W.D.N.Y 2004).

## VI.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, this 4th day of May, 2005.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
    The Honorable Wm. Terrell Hodges,
    Senior United States District Judge

    Counsel of Record